[ECF No. 51]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **CHRISTOPHER HALGAS**, <br><br> Plaintiff, <br><br> v. <br><br> **BURLINGTON COUNTY, et al.**, <br><br> Defendants. | Civil No. 23-2202 (CPO)(EAP) |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Defendants Cinnaminson Township, Richard Calabrese, Michael Curran, and Kyle Hess ("Defendants"), ECF No. 51 (Defs.' Mot.), seeking a protective order. Plaintiff Christopher Halgas has filed opposition, ECF No. 55 (Pl.'s Opp.) and Defendants' have filed a reply, ECF No. 56 (Defs.' Reply). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons that follow, Defendants' motion is **DENIED WITHOUT PREJUDICE**.

## FACTUAL BACKGROUND[1]

This civil rights case arises out of Plaintiff's April 19, 2021 seizure and arrest and the subsequent criminal proceedings. *See generally* ECF No. 1 (Compl.) At the time of his arrest, Plaintiff owned and operated CRH Property Management ("CRH"). *Id.* ¶ 10. Defendant Richard Calabrese was the Chief of Police, Defendant Michael Curran was a Sergeant, and Defendant Kyle Hess was an officer with the Cinnaminson Township Police Department. *Id.* ¶¶ 5-7.[2]

---

[1] The following facts are taken from the Complaint.
[2] On July 28, 2023, Plaintiff filed a Stipulation of Dismissal that dismissed his claims against Defendants Burlington County and Burlington County Prosecutor Scott A. Coffina without prejudice.

On September 13, 2019, Plaintiff, by and through CRH, entered into an agreement with non-party Delco Land Development, LLC ("Delco") to sell two commercial lots located at 299 and 301 Route 130 South ("Property"), Cinnaminson Township ("Township").  *Id.* ¶ 10.  The agreement provided Delco a six-month approval period to obtain the necessary permits, approvals, and licenses, with the option of extending the initial six-month period should Delco fail to do so.  *Id.* ¶¶ 12-13.  On May 11, 2020, CRH and Delco extended the initial approval period by ninety days.  *Id.* ¶ 13.  Delco sought, and CRH granted, several more extensions thereafter.  *Id.* ¶¶ 14-15.  According to Plaintiff, after CRH granted the first extension, Delco "entered into discussions with the Township regarding a deal wherein the Township would condemn the property at 299 & 301 Rt. 130 South in order to transfer the property to Delco . . . [and] replac[e] Mr. Halgas as the 'owner.'"  *Id.* ¶ 16.  The Complaint alleges that "the Township engaged in a backdoor deal with Delco Development to subvert the existing agreement between Delco Development and CRH for its own benefit."  *Id.* ¶ 23.

On April 9, 2021, the Township sent a notice of condemnation to CRH.  *Id.* ¶ 18.  Plaintiff learned about the notice approximately one week later when the Property's tenants notified him.  *Id.* ¶ 21.

Around April 16, 2021, Plaintiff "began repeatedly but unsuccessfully attempting to get in contact with Cinnaminson Township officials" regarding the notice.  *Id.* ¶ 22.  Plaintiff also "took to Facebook to air his frustrations with the Township and its abuse of power."  *Id.* ¶ 25.  Plaintiff posted pictures of the notice on a private Facebook group, which included the name of the Township Municipal Clerk, Lisa A. Passione.  *Id.* ¶¶ 25, 27.  Plaintiff also posted a message that referenced the Second Amendment of the United States Constitution and his belief that the seizure of his property was unconstitutional.  *Id.* ¶¶ 25-29.  According to the Complaint, at no point did Plaintiff threaten any

---

*See* ECF No. 39 (Stipulation).

offensive action involving the use of a firearm or other weapon toward any Township official. *Id.* ¶¶ 28-30.

On April 18, 2021, Cinnaminson Township Police Officer Young responded to police headquarters for a report of Terroristic Threats. *Id.* ¶ 31. Chief Calabrese allegedly informed Officer Young that Plaintiff had made threats toward the Township in a Facebook thread and that Township employees felt threatened. *Id.* The next morning, at 9:00 a.m., Plaintiff arrived at the Township Municipal Complex for an alleged pre-arranged meeting with Township Zoning Officer John Marshall but was told that Mr. Marshall would not be in until later that morning. *Id.* ¶¶ 35-37. Plaintiff remained in the Municipal Complex parking lot, waiting for Mr. Marshall's arrival. *Id.* ¶ 37. At approximately 10:19 a.m., Defendant Hess approached Plaintiff and asked him to step out of his vehicle. *Id.* ¶ 38. Defendant Hess then handcuffed Plaintiff and patted him down. *Id.* ¶ 39. Defendants Calabrese, Curran, and other non-defendant officers arrived on the scene shortly thereafter. *Id.* ¶ 41. The Complaint alleges that just before Defendant Hess arrested Plaintiff, Ms. Passione placed a 911 call because she believed that Plaintiff was following her and that he was armed and dangerous. *Id.* ¶ 42. Ms. Passione was allegedly over a mile away from the Municipal Complex at the time she claimed Plaintiff was following her. *Id.* ¶ 44. Security footage of the Municipal Complex showed that Plaintiff never left the parking lot, and therefore, could not have been following Ms. Passione. *Id.* ¶ 46.

During the arrest, Defendants questioned Plaintiff for six minutes and sought consent to search his vehicle. *Id.* ¶¶ 51-54. Plaintiff only consented to the search after realizing that he was not going to be released and "succumb[ed] to this duress." *Id.* ¶ 55. During the search, Defendants found a high-capacity magazine loaded with twenty-seven .223 caliber rifle rounds but did not locate any firearms. *Id.* ¶¶ 56-57. Plaintiff was arrested and charged with Terroristic Threats, in violation of

3

N.J.S.A. § 2C:12-3A, and Possession of a Large Capacity Ammo Magazine, in violation of N.J.S.A. § 2C:39-3J. *Id.* ¶ 58.

The next day, on April 20, 2021, the Burlington County Prosecutor's Office released Plaintiff "on Level I conditions with an additional stipulation that he *forfeit* all firearms, firearms identification cards, and firearms purchase cards registered to him." *Id.* ¶ 65 (emphasis in original). Officers also searched Plaintiff's residence and seized nine "properly registered and legally possessed weapons from the premises along with [Plaintiff's] firearms identification cards and various legal ammunition." *Id.* ¶ 66.

On March 29, 2022, the Burlington County Prosecutor's Office presented Plaintiff's case to a grand jury. *Id.* ¶ 73. According to the Complaint, the prosecution presented only the testimony of non-party Detective Rock, who had previously opined that Plaintiff's Facebook comments "did not constitute terroristic threats in his report a year beforehand." *Id.* The grand jury returned an indictment against Plaintiff. *Id.*

On July 20, 2022, Plaintiff filed a motion to dismiss in Plaintiff's state court criminal proceedings, arguing that the State would not be able to meet its burden of proof against him. *Id.* ¶ 74. On August 15, 2022, the prosecution withdrew all charges against Plaintiff. *Id.* ¶ 75. Plaintiff did not regain his seized firearms until September 13, 2022. *Id.* ¶ 76.

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit on April 19, 2023, setting forth the following claims for relief: (1) violation of 42 U.S.C. § 1983, false arrest, and false imprisonment against the Cinnaminson Township Defendants, *id.* ¶¶ 77-92; (2) violation of 42 U.S.C. § 1983, *Monell* claim against Defendants Cinnaminson Township and Chief Calabrese, *id.* ¶¶ 93-100; (3) violation of 42 U.S.C. § 1983, malicious prosecution against all Defendants, *id.* ¶¶ 101-115; (4) violation of 42 U.S.C. § 1983, *Monell* claim against Defendants Burlington County and Scott Coffina, *id.* ¶¶ 116-22; and (5)

4

violation of 42 U.S.C. § 1983, failure to supervise against Defendants Burlington County and Scott Coffina, *id.* ¶¶ 123-28.

After an initial conference, the case moved into discovery. At issue are two interrogatories and three requests for document production propounded by Plaintiff. Those interrogatories state:

> 11. Identify any and all complaints and or grievances filed with the Cinnaminson Township Police Department over the past five (5) years pertaining to police misconduct, use of excessive force, false arrest, false imprisonment, or unethical investigation techniques.
>
> 12. Identify any and all grievances and/or complaints filed against Defendant Officers within the last ten (10) years. For each grievance and/or complaint identified, please identify the date of the complaint/grievance, the complainant(s), the subject matter of the complaint/grievance, and what action Cinnaminson Township took in response.
>
> 13. State whether there have been any internal affairs investigations initiated against any of Defendant Officers during their tenure with the Cinnaminson Township Police Department. For any investigations identified, please provide the date(s) of the investigation, the individuals responsible for conducting said investigation, the actions taken by investigators during the course of the investigation, and the final outcome of the investigation.

Defs.' Mot. at 3-4 & Ex. D. The requests for document production seek:

> 5. Any and all documents and records pertaining to internal affairs investigations involving Defendants Richard Calabrese, Michael Curran, or Kyle Hess.
>
> 6. Any and all complaints and/or grievances filed against any officer of the Cinnaminson Township Police Department within the past five (5) years pertaining to misconduct, use of excessive force, false arrest, false imprisonment, or unethical investigation practices.

*Id.* at 4 & Ex. D.

The parties met and conferred to discuss Defendants' objections to Plaintiff's discovery requests, after which they agreed to narrow the scope of the interrogatories and document requests to the following:

1. The Plaintiff agreed to limit requests for internal affairs documentation and documentation for complaints and grievances to only the claims made in the complaint: false arrest, false imprisonment, violation of Fourth Amendment rights against unlawful searches and seizures, violation of Second Amendment right to bear arms, and malicious prosecution;

2. The Plaintiff agreed to narrow all requests to a five (5) year period prior to the incident at issue in this case, with the reservation to expand the time period in the future;

3. The Plaintiff did not agree to limit the scope to only those "internal affairs investigations, complaints and grievances" which have resulted in sustained findings of wrongdoing. However, [Plaintiff] did agree to exclude any complaints or grievances which have resulted in exonerations and unfounded findings. . . .

4. The Plaintiff did not agree to limit the scope of "internal affairs investigations, complaints and grievances" to only those lodged against the individual defendants named in this case but did agree to submit any such grievances and complaints not involving the named individuals, that are ordered to be produced, to the Court for a review and determination as to relevance.

*Id.* at 5 & Ex. F (Defs.' Jan. 5, 2024 Ltr.).

Despite this agreement, Defendants filed the present motion seeking a protective order to prevent or limit discovery of the Township Police Department's Internal Affairs ("IA") documentation. After this motion was fully briefed, the Court held a status conference on May 3, 2024. At that time, Plaintiff requested an administrative stay of this case pending resolution of his state-court criminal proceedings. The Court granted that request and administratively terminated this case. *See* ECF No. 61 (Order). Approximately ten months later, on October 31, 2024, Plaintiff's counsel advised the Court that Plaintiff's state criminal case had concluded and that he was ready to proceed with this civil action against Defendants. *See* ECF No. 64 (Letter). The Court scheduled a status conference with the parties on January 7, 2025, to discuss Plaintiff's letter and the status of the case. *See* ECF No. 65 (Text Order). After the status conference, the Court directed the Clerk's Office to reopen this case. *See* ECF No. 66 (Text Order). This matter is now ripe for decision.

6

**DISCUSSION**

Defendants seek a protective order on two grounds. First, Defendants assert that the information and documentation being sought is not relevant to Plaintiff's claims. Defs.' Mot. at 7. Second, regardless of whether the information and documents are relevant, Defendants argue that good cause exists for the entry of a protective order. *Id.* at 11. The Court addresses each argument in turn.

**A.    Relevance**

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides that, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Courts have construed Rule 26(b)(1) liberally, creating a broad vista for discovery which would encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). Moreover, relevance is more loosely construed at the discovery stage than at trial. *Id.* Nonetheless, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

Here, as noted above, Plaintiff seeks the IA files of both Defendant Officers and non-defendant officers spanning a period of five years that precede the date of the underlying incident. Plaintiff's request for documents includes complaints, grievances, and investigations against the officers, regardless of whether the complaints/investigations resulted in a finding of misconduct.

1. <u>Internal Affairs Files for Defendant Officers</u>

Defendants object to the production of the IA files for the Defendant Officers, arguing that any IA files relating to unsubstantiated complaints, grievances, and investigations should be excluded

because those claims were "unsupported by evidence" and that "[a]n allegation that an officer conducted a false arrest or was complicit in a malicious prosecution does not prove that such actions took place . . . ." Defs.' Mot. at 12. They contend that inclusion of unsubstantiated grievances "would only serve to confuse a future jury and paint [the] Cinnaminson Defendants as culpable despite the absence of substantiated proof of wrongdoing." *Id.*

Defendants' argument conflates the standard for admissibility of evidence with the standards set forth under Rule 26. "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Here, at a minimum, the IA files are relevant to Plaintiff's claims for malicious prosecution and false arrest/imprisonment against the Defendant Officers. "The recent case law in the District of New Jersey is clear. When a plaintiff's claims against a defendant police officer for malicious prosecution [and false arrest/imprisonment] are viable, the plaintiff is entitled to the complete internal affairs file for that officer because it is probative and relevant." *Brady v. Twp. of Woodbridge*, 19-17868, 2023 WL 8376281, at *2 (D.N.J. Nov. 27, 2023) (citing *Wiggins v. City of Trenton*, No. 11-5366, 2013 WL 1145483, at *2 (D.N.J. Mar. 18, 2013) (directing the production of the police officer defendants' entire internal affairs files where the plaintiff asserted claims of excessive force, malicious prosecution, and false arrest); *Alfone v. Town of Boonton*, No. 15-6656, 2017 WL 4366981, at *6 (D.N.J. Sept. 29, 2017) (ordering production of defendant officers' internal affairs files where plaintiff asserted claims of assault and battery and false arrest); *Dawson v. Ocean Twp.*, No. 09-6274, 2011 WL 890692, at *22 (D.N.J. Mar. 14, 2011) (ordering production of defendant officers' internal affairs files based on plaintiff's allegations of false arrest/imprisonment, excessive force, and malicious prosecution); *Jones v. DeRosa*, 238 F.R.D. 157, 164 (D.N.J. 2006) (finding that information in the defendant officers' internal affairs and personnel files was relevant to the § 1983 claims against them as individuals)).

Given that Plaintiff has pled plausible claims pursuant to 42 U.S.C. § 1983 for malicious prosecution and false arrest/imprisonment against the Defendant Officers in their individual capacities, the Court finds that the IA files constitute relevant and appropriate discovery.

### 2. IA Files for Non-Defendant Officers

Separately, Plaintiff seeks the IA files of non-defendant officers in the Township's Police Department. Plaintiff claims that these files are relevant for purposes of proving his *Monell* claims. Plaintiff contends that in order to bring his *Monell* claim, he must "establish not only that he was unlawfully detained and prosecuted by Defendant Officers, but also that Cinnaminson Township permitted and/or acquiesced to such behavior on the part of its officers." Pl.'s Opp. at 5. Plaintiff requests "information and documentation pertaining to related misconduct within the Cinnaminson Police Department within the five (5) years preceding Plaintiff's arrest[.]" *Id.* at 4. Plaintiff further contends that "[t]he relevance of this request is not tied to a particular officer, but simply that Cinnaminson Township knew or should have known that this conduct occurred within the police department." *Id.* at 5.

Under *Monell v. Department of Social Services of the City of New York*, municipalities may be held directly liable under 42 U.S.C. § 1983 for implementing or executing an unconstitutional governmental policy or custom. 436 U.S. 658, 690 (1978). "[A] plaintiff may put forth evidence showing that 'an unconstitutional policy or custom of the municipality led to his or her injuries.'" *Damarr-Faruq v. City of Pleasantville Police Dep't*, No. 21-11866, 2025 WL 830126, at *9 (D.N.J. Mar. 17, 2025) (citing *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019)). Liability may be imposed against a municipality depending on whether the allegation is based on a policy or a custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 694).

Where a plaintiff seeks liability against a municipality for an unconstitutional custom, "[l]iability . . . proceeds on the theory that the relevant practice is so widespread as to have the force

of law." *Groark v. Timek*, 989 F. Supp. 2d 378, 386 (D.N.J. 2013) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). "Custom may also be established by proof of knowledge and acquiescence." *Id.* (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989)). Mere reliance on statistics showing the frequency of certain types of complaints in a municipality is insufficient; rather, "a plaintiff must show why those prior incidents deserved discipline and how the misconduct in those cases is similar to that involved in the present action." *Id.* at 387 (quoting *Katzenmoyer v. Camden Police Dep't*, No. 08-1995, 2012 WL 6691746, at *4 (D.N.J. Dec. 21, 2012)). To make that showing, a plaintiff can provide evidence that the accused officer has been the subject of multiple similar complaints, or alternatively, can submit a sample of similar complaints from the relevant police department that bear similarities to his or her own case. *Id.* The plaintiff can then argue that these events "evinc[e] a tendency on the part of the internal affairs division to insulate officers from liability." *Id.* (quotation omitted).

> Here, the Complaint alleges that Defendant Cinnaminson Township
>
>> engaged in a practice or custom of making false allegations against those who confront the Township regarding its wrongdoings and/or illegal conduct. In situations where it became clear that the false allegations made against an individual would not withstand scrutiny, Cinnaminson would engage in a "fishing expedition" to find other purported grounds to justify its claims against the targeted individual.

Compl. ¶ 94. The Complaint further alleges that the Township's "practice or custom violated Plaintiff's right under the Fourth Amendment of the United States Constitution to be free from bodily seizure in the absence of probable cause and without a warrant." *Id.* ¶ 95.

The Court finds that Plaintiff has sufficiently articulated how the requested IA files of non-defendant officers are relevant to demonstrate that the Township may have either permitted or acquiesced to the alleged wrongful conduct that occurred in this case. Because Plaintiff's *Monell* claim is based on the allegation that the Township had a custom or practice that resulted in the alleged harms, Plaintiff must be able to demonstrate that the "relevant practice is so widespread as to have

the force of law." *Groark*, 989 F. Supp. 2d at 386 (citation omitted). As the parties previously agreed, the scope of the requests for the IA files for non-defendant officers shall be limited only to those IA files that relate to Plaintiff's claims. Because Plaintiff's *Monell* claim alleges that the Township either implemented or acquiesced to a custom or practice of bringing false allegations against individuals who challenged the Township's alleged wrongful acts, the IA files for non-defendant officers to be produced are limited to only those files that contain complaints, grievances, or investigations that officers have made false allegations.

**B.     Good Cause**

Alternatively, Defendants contend that good cause exists for the issuance of a protective order. Federal Rule of Civil Procedure 26(c) governs protective orders and provides that, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Protective orders are "intended to offer litigants a measure of privacy" and require "balancing between public and private concerns." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). Consequently, "it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." *Id.* (citing Fed. R. Civ. P. 26(c)). "Good cause means 'that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (quoting *Pansy*, 23 F.3d at 786). "Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede Tr. Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1984) (citing *Pansy*, 23 F.3d at 786).

In assessing whether good cause exists for the issuance of a protective order, courts in the Third Circuit consider several, non-exhaustive factors, set forth in *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994), such as:

> 1) whether disclosure will violate any privacy interest;
>
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> 3) whether disclosure of the information will cause a party embarrassment;
>
> 4) whether confidentiality is being sought over information important to public health and safety;
>
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
>
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
>
> 7) whether the case involves issues important to the public.

*Glenmede,* 56 F.3d at 483 (citing *Pansy,* 23 F.3d at 787-91.) Applying the factors set forth above, and for the reasons that follow, the Court finds that Defendants have not met their burden of demonstrating good cause.[3]

---

[3] To the extent that Defendants argue that the New Jersey Attorney General's Internal Affairs Policy and Procedures Manual (the "AG's Manual") mandates that the Court take a specific course of action for compelling discovery, they are mistaken. The New Jersey Attorney General drafted these guidelines pursuant to N.J.S.A. § 40A:14-18, which is directed to "[e]very law enforcement agency[.]" Guideline 9.6.1 states, "[t]he nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information." Defs.' Mot., Ex. G (AG's Manual) at 56. However, the guidelines explicitly permit disclosure "[u]pon a court order[.]" *Id.* at 57. Defendants contend that production of the requested documentation is only permissible if "found to be relevant and applicable by this Court following an *in camera* review and an order compelling [the] same." Defs.' Reply at 3.

The statute, however, does not direct or control how federal courts order the disclosure of internal affairs documents. Nor are the guidelines binding authority on this Court. Moreover, courts in this District routinely permit discovery of internal affairs documents in § 1983 cases. *See, e.g.*, *Schaeffer v. Tracey*, No. 15-8836, 2017 WL 465913, at *5 (D.N.J. Feb. 2, 2017) (holding internal affairs files remain discoverable when the moving party fails to establish good cause for protection); *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 322-23 (D.N.J. 2015) (finding production of

Under the first *Pansy* factor, the Court considers whether disclosure of the information will violate any privacy interest. *Pansy*, 23 F. 3d at 787. This factor may weigh in favor of a protective order when the disclosure of the information will cause the "infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection." *Id*.

Defendants contend that "[t]here is a strong public interest in the records of those unrelated officers remaining confidential because they have nothing to do with this case and should not be put on trial for the alleged actions of their coworkers." Defs.' Mot. at 12; Defs.' Reply at 4. Additionally, Defendants argue that "investigatory materials containing, names, addresses, phone numbers, family information, social security numbers and even possible banking information would be put at risk [for] the sake of possibly being relevant to support Plaintiff's claims." Defs.' Reply at 4. Finally, Defendants posit that disclosure could "reveal tactical information as to how the Cinnaminson Police Department investigates and prevents crimes" and "expose confidential information from ongoing criminal matters and put intradepartmental relations at risk if the identities of complainants are revealed." Defs.' Mot. at 12-13.

While the Court acknowledges Defendants' legitimate privacy concerns, the discovery confidentiality order ("DCO") entered in this matter substantially mitigates these concerns by limiting disclosure to only the parties and their counsel. Courts in this District have similarly held that such confidentiality orders effectively reduce privacy concerns and weigh against the issuance of protective orders. *See, e.g.*, *Castellani v. City of Atl. City*, 102 F. Supp. 3d 657, 668 (denying defendant's motion for a protective order because the privacy interests in the defendant's investigative process, witnesses, and complainants "can be addressed by way of a confidentiality order"); *Torres*

---

internal affairs files "critical to plaintiff's case" because she "cannot satisfy her burden of proving a *Monell* claim without looking at the content of Atlantic City's IA files"); *Groark*, 989 F. Supp. 2d at 388 (recognizing the "substantial unassailable body of New Jersey case law" permitting production of internal affairs reports for a § 1983 claim).

*v. Kuzniasz*, 936 F. Supp. 1201, 1214 (D.N.J. 1996) (ordering the production of internal affairs files in a § 1983 case subject to a limited protective order preventing disclosure of documents beyond "the plaintiffs, plaintiffs' counsel, and plaintiffs' experts or other agents," and permitting the files to "be used solely for the purposes of th[e] litigation"). Therefore, the first factor weighs against issuing a protective order.[4]

Second, the Court considers whether the information is sought for a legitimate purpose. *Pansy*, 23 F.3d at 787. Plaintiff here seeks the requested information to support his claims under 42 U.S.C. § 1983 for malicious prosecution and *Monell* liability. As it pertains to *Monell* liability, Plaintiff argues that he "must establish not only that he was unlawfully detained and prosecuted by Defendant Officers, but also that Cinnaminson Township permitted and/or acquiesced to such behavior on the part of its officers." Pl.'s Opp. at 5. Specifically, Plaintiff seeks "information and documentation related to similar type complaints made within the five (5) years preceding his arrest in order to establish that Cinnaminson Township was on notice of such occurrences and, at a minimum, turned a blind eye to this conduct." *Id*.

As previously discussed, these records are relevant to establishing Plaintiff's claims. The Court finds no evidence suggesting Plaintiff has sought this information for an illegitimate purpose, and Defendants have not asserted any such motive.[5] Therefore, this factor weighs against issuing a

---

[4] While the DCO provides general protection against improper disclosure, the Court will still require redaction of particularly sensitive personal identifiers such as Social Security numbers, home addresses, telephone numbers, financial information, and family information—unless they relate to relevant witnesses—before production. *Groark*, 989 F. Supp. 2d at 400 (requiring redaction of "social security numbers, addresses, telephone numbers, driver's license numbers, financial information, and information pertaining to their family members and friends (unless they are relevant witnesses)"; *see Brady v. Twp. of Woodbridge*, No. 19-17868, 2023 WL 8376281, at *3 (D.N.J. Nov. 27, 2023) (directing redaction of "Social Security numbers, taxpayer identification numbers, birth dates, the names of minors, financial information, or medical information").

[5] Defendants argue that "there are no facts or other information in Plaintiff's pleadings or discovery responses to date to suggest that anyone other than Plaintiff has been subjected to alleged constitutional violations by the Cinnaminson Defendants." Defs.' Reply at 6. That argument misapprehends the discovery standard. Under Federal Rule of Civil Procedure 26(b)(1), discovery

protective order.

Third, the Court considers whether disclosure would cause a party embarrassment. *Pansy*, 23 F. 3d at 787. For this factor to support a protective order, the embarrassment must be substantial and rise to the level of a "clearly defined and serious injury." *Id*. at 786. Defendants allege that disclosure would put the Township Police Department and individual officers at risk of "professional and reputational harm through judgment passed on substantiated and unsubstantiated complaints." Defs.' Reply at 5. They contend that "the court of public perception cares little about burdens of proof" and may reach conclusions based solely on allegations. *Id.* at 4.

Defendants' generalized embarrassment concerns do not rise to the level of a "defined and serious injury[.]" *Glenmede*, 56 F.3d at 484 (finding the movants' "[g]eneral allegations of injury to reputation and client relationships or embarrassment that may result from dissemination of privileged documents" are insufficient "to warrant the entry of an umbrella protective order."); *see also Burgess v. Galloway*, No. 20-6744, 2021 WL 2661290, at *5 (D.N.J. Jan. 28, 2021) ("The harm alleged by Burgess is neither 'clearly defined' nor 'shown with specificity.'" (citation omitted)). More importantly, the existing DCO in this case significantly mitigates Defendants' concerns pertaining to the "court of public perception" by restricting access of the requested information to the parties and their attorneys. Therefore, the Court finds that the third factor weighs against a protective order.

Fourth, the Court considers whether a party seeks confidentiality over information important to public health and safety. *Pansy*, 23 F. 3d at 787. Confidentiality of such information is disfavored.

---

need only be "relevant to any party's claim or defense and proportional to the needs of the case." The discovery of internal affairs documentation may reveal pattern evidence relevant to Plaintiff's claims regardless of whether other instances of constitutional violations were specifically pleaded. Defendants' argument conflates the pleading standard under Federal Rule of Civil Procedure 8 with the broader standards applicable to discovery. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that federal discovery rules have been construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

15

*Id*.  Defendants argue that "a strong public safety interest in protecting internal affairs information" exists because disclosure could undermine the "effectiveness, integrity, and safety of the Cinnaminson Police Department" and could "potentially become available for public criticism, which would erode public trust and the ability of the Department to function within the community." Defs.' Reply at 4-5.  These concerns, however, remain largely speculative given that Defendants have not identified specific tactical information in the IA files that would compromise operations if disclosed under the existing DCO.  Moreover, and perhaps more importantly, revealing incidents of police misconduct serves public safety. *See Wright v. City of Phila.*, No. 16-5020, 2017 WL 5571061, at *5 (E.D. Pa. Nov. 20, 2017) ("[I]nformation about potential police misconduct is important to public safety.").  Therefore, the fourth factor weighs against a protective order.

Fifth, the Court considers whether sharing information among litigants promotes fairness and efficiency. *Pansy*, 23 F. 3d at 787.  Disclosure of internal affairs files relevant to civil rights claims serves these goals by allowing parties to adequately prepare their cases. *Castellani*, 102 F. Supp. 3d at 669.  Denying Plaintiff access to relevant information would impede the truth-seeking function of discovery while unfairly allowing the Defendants sole access to the information in preparation of their defenses.  Therefore, this factor weighs against a protective order.

Sixth and seventh, the Court must consider whether a party benefiting from confidentiality is a public entity or official, and whether the case involves issues important to the public. *Pansy*, 23 F.3d at 788-89.  "[P]rivacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Id*. at 787.  The Defendants—police officers and the Township—are indisputably public officials.[6]  The public has a substantial interest in allegations of

---

[6] *See Coughlin v. Westinghouse Broad. & Cable, Inc.*, 603 F. Supp. 377, 386 (E.D. Pa. 1985) (holding that police officers are public officials because "[t]he strong public interest in ensuring open discussion and criticism of [an officer's] qualifications and job performance warrant the conclusion that" police officers are public officials) (quoting *Gray v. Udevitz*, 656 F.2d 588, 591 (10th Cir. 1981)).

16

misconduct by police officers and departments, particularly regarding constitutional violations. *Castellani*, 102 F. Supp. 3d at 669. The "[p]erformance of police duties and investigations of their performance is a matter of great public importance." *Id*. (quoting *McGee v. City of Chicago*, No. 04-6352, 2005 WL 3215558 at *3 (N.D. Ill. June 23, 2005)). Moreover, "[a] request for citizen complaints against police officers must be evaluated against the backdrop of the strong public interest in uncovering civil rights violations and enhancing public confidence in the justice system through disclosure." *Id*. (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 621 (N.D. Cal. 1995)). Accordingly, the final two factors strongly weigh against the issuance of a protective order.

For the foregoing reasons, the Court finds that Defendants have failed to establish good cause for a protective order under Rule 26(c). While the Court recognizes the need to protect certain sensitive personal information, the existing DCO, coupled with the additional redaction requirements set forth in this Opinion, provides sufficient protection without the need for a blanket protective order over all IA materials. Defendants' motion for a protective order is denied.

**C.     *In Camera* Review**

Finally, Defendants argue that production of the requested documentation is only permissible if "found to be relevant and applicable by this Court following an *in camera* review and an order compelling same." Defs.' Reply at 3. Defendants, however, have provided no authority mandating *in camera* review of these documents. While a district court has the authority to conduct an *in camera* review in appropriate circumstances, "the court should not conduct such a review solely because a party begs it to do so." *Groark*, 989 F. Supp. 2d at 400 (citing *U.S. v. Zolin*, 491 U.S. 554, 571 (1989)).

Although the parties seemingly reached a pre-motion agreement to submit IA documentation pertaining to non-defendant officers for *in camera* review to determine relevance, the Court finds such review neither required nor warranted in this matter. *See, e.g., Wood v. Borough of Woodlynne*, No. 21-20738, 2023 WL 3775308, at *10 (D.N.J. June 2, 2023) (declining to conduct an *in camera*

17

review of Defendant's internal affairs and personnel files "because it is likely that these records will contain information relevant to Plaintiff's *Monell* claim."). In the absence of any asserted privileges, screening the documents for confidential information would be an unproductive use of judicial resources. Therefore, Defendants' request for an *in camera* review is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for entry of a protective order is **DENIED WITHOUT PREJUDICE**. An appropriate Order will follow.

s/Elizabeth A. Pascal<br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge<br>
Date: August 7, 2025

cc: Hon. Christine P. O'Hearn, U.S.D.J.